UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-14011-CR-GRAHAM/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN PAUL EVERHART, II,

    Defendant.

_____/

FILED by _____ D.C.

JUL 3 0 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON THE FINAL HEARING OF SUPERSEDING PETITION FOR VIOLATIONS OF SUPERVISED RELEASE

**THIS CAUSE** having come on to be heard on July 24, 2013 for the final hearing in respect to the alleged violations of supervised release set forth in the Superseding Petition signed by Judge Graham on July 2, 2013, and this Court having received evidence, testimony, and arguments of counsel, recommends to the District Court as follows:

    1.    A preliminary probable cause hearing was conducted by United States Magistrate Judge William Matthewman on July 8, 2013. Judge Matthewman was covering the undersigned United States Magistrate Judge while out of the District. At the outset of this final hearing on July 24, 2013, counsel for the government, counsel for the Defendant, and the Defendant all individually acknowledged and agreed that all evidence and argument received by Judge Matthewman at the preliminary probable cause hearing on July 8, 2013 may be made a part of the record in this final hearing. Therefore, this Court will incorporate the evidence, arguments of counsel, and Judge Matthewman's findings into this final hearing and those shall be made part of the record in respect to this final hearing.

    2.    The Superseding Petition alleges the following seven violations:

| | |
|---|---|
| **Violation Number 1** | **Violation of Mandatory Condition**, by failing to refrain from violation of law. On or about May 23, 2012, in Palm Beach County, Florida, the defendant made false representations to the probation officer by reporting that Davida Chea Brannon, a 22 year old female, was his cousin, when in fact she is not related to the defendant, contrary to 18 U.S.C. §1001. |
| **Violation Number 2** | **Violation of Standard Condition**, by failing to answer truthfully all inquiries by the probation officer. On May 23, 2012, the defendant was questioned regarding his relationship to Davida Chea Brannon, W/F, DOB: 02/22/1990, DOC #Q24292, and stated that she was his cousin, when in fact, evidence and statements of Davida Chea Brannon and letters from the defendant to Davida Chea Brannon indicate this to be false. |
| **Violation Number 3** | **Violation of Standard Condition**, by associating with a person who is a convicted felon without permission of the probation officer. On or about at least September 2011 through at least March 6, 2013, the defendant knowingly associated with Davida Chea Brannon, W/F, DOB: 02/22/1990, DOC #Q24292, convicted in Jackson County, Florida, on May 13, 2010, in Case No. 322010CF000259CFAXMX, and sentenced to one year, nine months and one day custody of the State of Florida Department of Corrections for the offenses of possession of methamphetamine and fraudulent use of personal identification. |
| **Violation Number 4** | **Violation of Standard Condition**, by failing to answer truthfully all inquiries by the probation officer, in that, on April 25, 2012, the defendant reported to the probation officer that Davida Chea Brannon was his cousin and requested to reside with her. |
| **Violation Number 5** | **Violation of Standard Condition**, by possessing or using a computer with access to any online computer service at any location, without the |

|  |  |
|---|---|
|  | prior approval of the Court. On or about September 2011, the defendant did have contact with David Chea Brannon in an online web site without prior approval from the Court. |
| **Violation Number 6** | **Violation of Special Condition**, by buying, selling exchanging, possessing, trading or producing visual depictions of adults engaged in sexually explicit conduct. On or about June 27, 2013, the defendant bought, sold, exchanged, possessed and/or produced visual depictions of adults engaged in sexually explicit conduct as evidenced by the 16 commercially produced Digital Video Discs (DVD) and 11 bootleg DVD copies of commercially produced visual depictions of adults engaged in sexually explicit behavior found in his possession. |
| **Violation Number 7** | **Violation of Special Condition**, by possessing or using a computer with an internal, external or wireless modem without the prior approval of the Court. From on or about March 21, 2013, through June 20, 2013, the defendant did use a computer with access to online computer service, as evidenced by pictures and contact information for 26 female inmates located at various institutions throughout the United States. Each female contact was obtained from various online web sites to include: prisonpenpals.com, meet-an-inmate.com, jailhouse-babes.com, paperdollspenpals.com, prisoninmates.com, cowtowninfo.com, and writeaprisoner.com. |

3. At the preliminary probable cause hearing before Judge Matthewman and at the final hearing conducted by this Court, the government requested that Violation Number 5 of the Superseding Petition be dismissed and that the government was not proceeding further in respect to the allegations contained within Violation Number 5 of the Superseding Petition. Therefore, this Court's recommendations set forth herein will include recommending to the District Court that the government's motion to voluntarily dismiss the

allegation set forth in Violation Number 5 be granted and that violation be removed from consideration by the District Court in respect to the Superseding Petition.

4. The testimony, evidence, and arguments received by this Court at the final hearing are as follows:

_____

5. The first witness called by the government was United States Probation Officer Kristen Moberg. USPO Moberg began supervision of this Defendant in September of 2012. The Defendant was previously sentenced in the underlying criminal case on or about August 18, 2006. A copy of the Judgment and Sentence along with the conditions of supervised release, was admitted into evidence at this hearing as Government's Exhibit No. 1.

6. The Defendant's current supervision with USPO Moberg began after the Defendant had his supervised release revoked on or about May 26, 2011 by the District Court. The Defendant was sentenced to five months in the custody of the Bureau of Prisons followed by 234 months of supervised release. After concluding that period of incarceration, this supervised release began with USPO Moberg on or about September 23, 2011.

7. The evidence received by this Court established that the Defendant was aware of the conditions of supervised release imposed at the time of his original sentencing by Judge Graham as reflected in Government's Exhibit No. 1 and that he was informed of those standard conditions and special conditions by his previous United States Probation Officer Gagliardi, who has since passed away.

8. The standard conditions of supervised release as well as the special conditions of supervised release set forth within Government's Exhibit No. 1 do correspond to conditions which the Superseding Petition alleges the Defendant violated in respect to the specific conduct set forth within each violation set forth in the Superseding Petition.

9. During the final hearing, USPO Moberg testified from notes other individuals made within the Defendant's supervision file held by the United States Probation Office. This was in respect to the allegations reflecting the Defendant's request to have Davida Chea Brannon reside with him. The Defendant objected to this hearsay testimony unless the government was able to establish the unavailability of the witnesses who actually received that information from the Defendant and made those notations. Counsel for the government announced that it did have those witnesses present to testify in court. This Court points out that these witnesses did later testify during the final hearing. As a result of the Defendant's objection, this Court did agree that the Defendant had the right to confront those witnesses who purportedly spoke directly and interacted directly with the Defendant concerning these particular requests. This Court sustained the Defendant's objection and stated that it would not consider any testimony USPO Moberg was giving in respect to notes of others she was testifying from contained within the Defendant's file with the U. S. Probation Office. Therefore, this Court will not recite for the District Court any of the objectionable testimony which this Court agreed to strike. This Court will only include within this Report and Recommendation the evidence and testimony received directly by the witnesses who testified.

10. USPO Moberg did speak with the Defendant at one time in or around April of 2012. The Defendant told USPO Moberg that someone was calling and telling the

Defendant to stay away from that person's girlfriend. The Defendant told USPO Moberg that he had "pen pals" who he wrote to in prison. The evidence later reflected these "prison pen pals" were females with whom the Defendant was corresponding after obtaining information about them and from them via the Internet.

11. USPO Moberg told the Defendant that he was not to have any contact with any convicted felons. The Defendant stated that he knew this, but just "blew that off."

12. The United States Probation Office received letters from an individual identified as a Mr. Larimore from Pensacola, Florida. This individual called USPO Moberg on the phone and spoke with her about the Defendant having contact with Mr. Larimore's "girlfriend" who Mr. Larimore identified as Davida Chea Brannon. The letters that Mr. Larimore forwarded to USPO Moberg were purportedly from the Defendant to Davida Chea Brannon requesting that she live with the Defendant in West Palm Beach and telling Davida Chea Brannon to lie to his Probation Officer and say that they were cousins. These letters sent by Mr. Larimore were the original letters purportedly from the Defendant with envelopes including the Defendant's correct return address as reflected in the U. S. Probation Office file. Further, USPO Moberg testified that these letters contained photos of the Defendant which he was sending to Davida Chea Brannon. USPO Moberg also testified that she recognized the Defendant's handwriting in these letters sent to Davida Chea Brannon to match the Defendant's handwriting on his monthly reports submitted to the United States Probation Office.

13. Government's Exhibit No. 2 admitted into evidence at this hearing is the letter from Mr. Larimore with photos purportedly sent by the Defendant to Davida Chea Brannon. Government's Exhibits Nos. 3 through 8 inclusive, which were admitted into evidence at

this hearing are copies of the letters purportedly sent from the Defendant to Davida Chea Brannon.

14. Some of the excerpts from these letters which specifically deal with the alleged violations are as follows:

> Government's Exhibit No. 3 is a letter that references going on line on the Internet to check out the various social network sites that Davida Chea Brannon was on.
>
> Government's Exhibit No. 4 contains information where the Defendant said he could get drugs for them their first night together after Davida Chea Brannon moved in with him.
>
> Government's Exhibit No. 5 references drug use again and refers to that in particular.
>
> Government's Exhibit No. 6 contains references by the Defendant to getting a text message to "hook up" and have some person's husband to film their encounter.
>
> In Government's Exhibit No. 7 the Defendant, among other things, tells Davida Chea Brannon that she would be living in West Palm Beach and that he told his U. S. States Probation Officer that Davida Chea Brannon was his cousin.
>
> Government's Exhibit No. 8 contains information wherein the Defendant said that he told his U. S. Probation Officer that Davida Chea Brannon was his cousin and asks her to write to the Defendant's U. S. Probation Officer requesting permission to live with the Defendant.

15. USPO Moberg investigated Davida Chea Brannon on line by looking at the Florida Department of Corrections website. She also spoke with a prison investigator with the Florida Department of Corrections and requested permission to speak over the telephone with Davida Chea Brannon. Government's Exhibit No. 9 admitted into evidence at this hearing is the information that USPO Moberg was able to obtain from the Florida Department of Corrections on line. This reflects that Davida Chea Brannon is a convicted

7

felon. This exhibit also contains the other biographical information concerning Davida Chea Brannon as more particularly referenced in the Superseding Petition alleging violations of supervised release.

16. USPO Moberg interviewed Davida Chea Brannon over the telephone on or about May 20, 2013. Ms. Brannon confirmed with USPO Moberg that she was not related to the Defendant in any way.

17. On cross-examination, USPO Moberg acknowledged that the first request from the Defendant to allow Davida Chea Brannon to live with him was denied verbally by USPO Samson and USPO Supervisor Smith. Further, this denial was communicated to the Defendant at his residence in May of 2012 according to the United States Probation Office file. Once again on cross-examination, USPO Moberg responded and stated that the United States Probation Office file on the Defendant references a letter of May 21, 2012 to the Defendant from the U. S. Probation Office in regards to the Defendant's request for his "cousin" Davida Chea Brannon to live with him. This letter also references that Davida Chea Brannon was in fact a convicted felon. USPO Moberg testified that the Defendant was told he could contact Davida Chea Brannon one more time and advise her that the request to live with him had been denied.

18. On cross-examination, USPO Moberg testified that the reason for the denial of the Defendant's request to have Davida Chea Brannon live with him was that Ms. Brannon was a 22 year old female requesting to live in western Palm Beach County where their records reflect 100 sex offenders lived. USPO Moberg acknowledged that her office would consider even a convicted felon who was a relative to be permitted to live with someone on supervised release. Any such request would have to be investigated further.

19. USPO Moberg testified on cross-examination that the Defendant said that he had "pen pals" who were in prison as referenced by this Court previously herein. Davida Chea Brannon explained to USPO Moberg that she became a pen pal with the Defendant via an Internet website. USPO Moberg acknowledged that there is no evidence that the Defendant and Davida Chea Brannon have ever had "personal contact" nor contact on the Internet. The allegations are that the Defendant obtained information regarding these various "pen pals" who were females in prison, including Davida Chea Brannon, and then communicated with them by written letters sent through the U. S. Mail. USPO Moberg also testified that there may have been a couple of times when the Defendant talked on the phone with Davida Chea Brannon and corresponded through letters, examples of which were admitted into evidence at this final hearing.

20. USPO Moberg testified that the Defendant was allowed to use the Internet at his Work Force site to look for jobs. However, he was not to browse the Internet nor use the Internet in any available station, including the public library.

———

21. The next witness called by the government was Rick Samson. USPO Samson identified the Defendant in open court as the individual he knows to be this Defendant in this case. After USPO Gagliardi passed away, USPO Samson took over supervision of the Defendant in May of 2012. At or about that time, the Defendant called into the United States Probation Office and USPO Tierney turned the Defendant's telephone call over to USPO Samson. That telephone call was a request by the Defendant for Davida Chea Brannon to live with him. USPO Samson testified that he told the

9

Defendant that the request was denied because Davida Chea Brannon was a convicted felon.

22. The Defendant became upset and argumentative with USPO Samson over the telephone. The Defendant said that Davida Chea Brannon was his cousin and asked why USPO Samson was denying a family member to be permitted to live with the Defendant.

23. On or about May 23, 2012, USPO Samson and USPO Smith conducted a field visit to the Defendant's residence in Palm Beach County. They all discussed the request for Davida Chea Brannon to live with the Defendant and explained why that was denied. The Defendant continued to assert that Davida Chea Brannon was his cousin according to USPO Samson.

24. On cross-examination, USPO Samson testified that the request for Davida Chea Brannon to reside with the Defendant was denied because she was a convicted felon and he did not want to place her in an area where there are 100 sex offenders in Pahokee, Florida, where the Defendant resides. In addition, USPO Samson testified that Davida Chea Brannon has prior drug use issues. All of these issues, including whether or not she was actually the Defendant's cousin, were taken into consideration by the United States Probation Office.

25. After Judge Graham issued an arrest warrant and permission to search the Defendant's residence in respect to these alleged violations of supervised release, USPO Samson participated in the Defendant's arrest on or about June 27, 2013. At that time, a search of the Defendant's residence took place as well.

26. Government's Exhibit No. 10 admitted into evidence at this hearing is a composite exhibit of adult video covers which were found in the Defendant's bedroom closet along with the actual videos. The depictions in this exhibit reflect advertisements for the videos involving adults in sexually explicit conduct as is prohibited by the Defendant's conditions of supervised release. These commercial covers were admitted into evidence as part of Government's Exhibit No. 10. The actual videos were not offered nor admitted into evidence.

27. Also found during the search were various documents in the Defendant's residence. These documents were letters to various pen pals in prison. Government's Exhibit No. 11 admitted into evidence at this hearing is a composite exhibit of various websites where these "pen pals" list their personal information and contact information. These exhibits appear to the Court to set forth personal information and contact information for various females who were in prison in various locations throughout the United States at the time that this information was possessed by the Defendant. Some, if not all, contain photographs of the "pen pals" on each site.

---

28. The next witness called by the government was Sheila Tierney. USPO Tierney also works out of the West Palm Beach office as the other witnesses who have testified at this final hearing. She had contact with the Defendant over the telephone. She has never met the Defendant and has never been a supervising USPO for this Defendant.

29. On April 25, 2012, USPO Tierney was the Duty Officer on at the time that the Defendant called requesting that his cousin, named Davida Chea Brannon, be permitted

11

to live with him. USPO Tierney stated that she was aware, based on that phone call, that Davida Chea Brannon was in the custody of the Florida Department of Corrections. This request was denied at that time by other U. S. Probation Officers.

30.     USPO Tierney testified that there was a later request to USPO Tierney by the Defendant which was also denied by her and a follow-up letter was sent on May 21, 2012 to the Defendant regarding that denial.

31.     At the conclusion of USPO Tierney's testimony, the government rested.

32.     The Defendant rested as well without presenting any witnesses or evidence.

## ANALYSIS

33.     First, this Court reiterates that the government requested that it be permitted to voluntarily dismiss Violation Number 5 set forth in the Superseding Petition. This Court recommends that the motion be granted and that Violation Number 5 not be considered by the District Court in respect to the Superseding Petition.

34.     This Court will not restate all of the evidence which was received both at the preliminary hearing and the final hearing. This Court would point out that all of the evidence concerning the remaining six violations set forth in the Superseding Petition was presented by way of sworn testimony and documentary evidence received by this Court at the final hearing.

35. In respect to Violation Number 1, this Court finds that the Defendant did in fact make false representation to his Probation Officers by asserting that Davida Chea Brannon was in fact his cousin when she was not. The testimony and evidence received by this Court was that Ms. Brannon, herself, advised that she had no family relationship whatsoever to the Defendant. Further, the evidence and testimony received by this Court was that the Defendant asserted, at the time of his request, that she was in fact his cousin. This is a violation of the Defendant's conditions of supervised release.

36. In respect to Violation Number 2, the biographical information concerning Davida Chea Brannon as set forth in Government's Exhibit No. 9 does comport with the allegations in that violation. This Court acknowledges the Defendant's argument that the fact of whether or not she was in fact his cousin, is not material to the issues. However, this Court disagrees with that argument and finds that the Defendant's assertion that Davida Chea Brannon was his cousin not only is germane to the issue of making false representations as set forth in Violation Number 1, but that the Defendant's own letters to Davida Chea Brannon confirm that he was making false statements concerning her relationship to him as a cousin. Some of these letters instruct Davida Chea Brannon to lie to her Probation Officer as well as to the Defendant's Probation Officer in asserting there was some family relationship between the Defendant and Ms. Brannon. Therefore, this Court finds that the evidence submitted to this Court accurately reflects that Davida Chea Brannon was a convicted felon and was not the Defendant's cousin as asserted by the Defendant in statements to his U. S. Probation Officer and in letters admitted into evidence.

37. In respect to Violation Number 3, once again, the documents admitted into evidence accurately reflect that Davida Chea Brannon was a convicted felon at the time that the Defendant requested permission for her to live with him in Palm Beach County. Therefore, the allegations set forth in Violation Number 3 are accurate and have been proven. The condition wherein the Defendant is not to associate with convicted felons would therefore be violated by this knowing contact by the Defendant with Davida Chea Brannon.

38. In respect to Violation Number 4, once again the evidence establishes that Davida Chea Brannon was not the Defendant's cousin and that the request being made by the Defendant on or about April 25, 2012 to his U. S. Probation Officer for Ms. Brannon to live with him, included false assertions that Ms. Brannon was his cousin. Therefore, that condition of supervised release was also violated.

39. In respect to Violation Number 6, the documents admitted into evidence as Composite Exhibit No. 10 do reflect commercial covers of various adult pornographic videos depicting females and males involved in sexually explicit conduct. This evidence also is sufficient to violate the Defendant's specific conditions of supervised release as set forth in the Judgment and Sentence.

40. Finally, in respect to Violation Number 7, the Defendant was not to use a computer with an internal, external, or wireless modem, such as even a Smartphone, for obtaining information via the Internet. Government's Exhibit No. 11 admitted into evidence at this final hearing reflects that the Defendant was in possession of information obtained via the Internet concerning various "prison pen pals" and where these females could be contacted. All of the information contained within Government's Exhibit No. 11 appear to

be from Internet websites as more particularly set forth in the allegations of Violation Number 7. This Court finds that the evidence is sufficient to sustain the government's burden of proof in respect to Violation Number 7 prohibiting the Defendant from possessing or using a computer with an internal, external, or wireless modem without prior approval from the Court. Some of the documents contained within Government's Exhibit No. 11 reflect that they were downloaded and printed between March of 2013 and June of 2013 as alleged in Violation Number 7.

41. The burden of proof in cases such as this is by a preponderance of the evidence standard. The government has through witness testimony and documentary evidence, sustained its burden in that regard in respect to Violations Numbers 1, 2, 3, 4, 6 and 7 as specifically referenced herein. As such, this Court will recommend that the Defendant be found to have violated his supervised release in regards to those specific violations. In respect to Violation Number 5, this Court will recommend that the District Court grant the government's request to dismiss Violation Number 5 from consideration.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to Violations Numbers 1, 2, 3, 4, 6 and 7 of the Superseding Petition filed herein and that the District Court grant the government's request to dismiss Violation Number 5, and that this matter be set for a sentencing hearing at the earliest convenience of the District Court for final disposition of this matter.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, the United States District Judge assigned to this case. Pursuant to Federal Rules

of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this 30th day of July, 2013, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Donald L. Graham
AUSA Russell Killinger
AFPD Fletcher Peacock
U. S. Probation
U. S. Marshal