UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-14011-CR-GRAHAM/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN PAUL EVERHART, II,

    Defendant.
_____/



## REPORT AND RECOMMENDATION ON FINAL HEARING IN RESPECT TO THE PETITION ALLEGING VIOLATIONS OF SUPERVISED RELEASE [D.E.120]

**THIS CAUSE** having come on to be heard for a final hearing on March 2, 2017, in respect to the pending Petition Alleging Violations of Supervised Release [D.E. 120], and this Court having received testimony, evidence, and arguments of counsel, recommends to the District Court as follows:

1. The Defendant is charged by a Petition with the following violations of supervised release:

| | |
|---|---|
| **Violation Number 1** | **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about March 16, 2016, in Saint Lucie County, Florida, the defendant committed the offense of failure of sex offender to report in person to the Department of Highway Safety and Motor Vehicles within 48 hours after a change in permanent, temporary, or transient residence, contrary to Florida Statute 943.0435(4)(a). |
| **Violation Number 2** | **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about March 17, 2016, in Saint Lucie County, Florida, the defendant did threaten Frank LaFergola, contrary to Florida Statute 836.05. |

**Violation Number 3**     **Violation of Standard Condition**, by associating with a person who is a convicted felon without permission of the U.S. Probation Officer. On or about March 17, 2016, the defendant knowingly associated with Frank LaFergola, a known convicted felon.

2. The first witness called by the government was United States Probation Officer Robert Tango. He has been supervising the Defendant since March 11, 2016. He identified the Defendant in open court as the person he is presently supervising. The Defendant was advised of all conditions of supervised release by his U. S. Probation Officer upon his release from prison. Further, the Defendant is advised every time that he comes to the Probation Office in Fort Pierce, to not associate with any convicted felons unless permission is granted in advance by his U. S. Probation Officer.

3. The Defendant was charged in St. Lucie County state court with failing to report in person to the Department of Highway Safety and Motor Vehicles within forty-eight hours of a change in permanent address. This offense allegedly occurred on March 16, 2016. The Defendant ended up entering a plea of nolo contendere in that case and the Judgment and Conviction along with fingerprints were admitted into evidence as Government's Exhibit No. 1 at this hearing. The Defendant was adjudicated guilty in that state case and committed to the Florida Department of Corrections for a period of 366 days as the exhibit so reflects.

4. Counsel for the government requested that this Court take judicial notice of [D.E. 107] and [D.E. 119] in this case. [D.E. 107] is this Court's previous Report and Recommendation dated May 29, 2015 in this case in which the Court conducted a prior hearing concerning previous violations of supervised release. [D.E. 119] is the District

Court's Judgment and Commitment based upon the final hearing this Court held as reflected in its Report and Recommendation [D.E. 107]. Counsel for the Defendant had no objection and later during the proceeding the government submitted the request for the Court to take judicial notice of those documents to reflect that the Defendant previously knew that he was not to associate with Frank LaFergola and that he has previously been found to have violated his supervised release in respect to his contact with Mr. LaFergola, a convicted felon.

5. On cross-examination, Mr. Tango testified that the Defendant was released from prison on or about March 11, 2016 when he began supervising the Defendant. The Defendant was to report on Monday, March 14th since March 11th was a Friday. The Defendant did report on March 14, 2016 both to the St. Lucie County Sheriff's Office to make his registration as a sex offender current there and to the U. S. Probation Office.

6. Defendant's Exhibit No. 1 admitted into evidence at this hearing is an e-mail to Mr. Tango from Tonya Hill with the Bureau of Prisons concerning a request that the Defendant be given housing assistance. According to Mr. Tango, this request was denied by his office since the Defendant had previously been supported by his mother and was living with her and also had family assistance with his residence at the Sunset Inn on U.S. Highway 1 in Fort Pierce where the Defendant began to reside when he was released from prison on March 11, 2016.

7. Mr. Tango testified that the Defendant had 48 hours from March 11, 2016 to go to the Department of Highway Safety and Motor Vehicles (DMV) to change his address as a registered sex offender. Since the weekend intervened, it was Mr. Tango's understanding that the sheriff's office would not enforce that 48 hours until the next

business day. Therefore, the Defendant had the following Monday and Tuesday in full to make sure that he had his registration with the DMV current on or before March 16, 2016 which was actually the third day after the weekend.

8. Defendant's Exhibit No. 2 admitted into evidence at this hearing is a copy showing that his registration with the Department of Highway Safety and Motor Vehicles was in fact not done until March 17, 2016. This Court is not exactly certain why the Defendant wanted to introduce this as an exhibit since it establishes that the Defendant did not comply and have his registration with the DMV changed by March 16, 2016 which was the date he was required to do so. Nevertheless, this Court did admit that exhibit into evidence at this hearing.

9. Mr. Tango testified that he contacted Detective DeMichael of the St. Lucie County Sheriff's Office to determine if the Defendant had in fact registered with the St. Lucie County Sheriff's Office as required and if the Defendant had made the change of address with the DMV as required as a registered sex offender. While the Defendant did register with the St. Lucie County Sheriff's Office, it was confirmed that he had not so registered with the DMV on or before March 16, 2016.

10. Defendant's Exhibit No. 4 admitted into evidence at this hearing is an arrest warrant for the Defendant for the state offense referenced above which resulted in his conviction and sentence in state court.

11. Mr. Tango testified that on March 17, 2016 at approximately 10:00 a.m. the Defendant met with him at the U. S. Probation Office here in Fort Pierce. The Defendant still had his driver's license with the old address of Florida Avenue in Fort Pierce. The Defendant did not say that he was going to change that address immediately upon leaving

4

the Probation Office and he did not say that he was going to do that. However, it was determined that he did make the change at the DMV later that day on March 17, 2016, which was beyond the 48 hour period required.

12. Defendant's Exhibit No. 5 admitted into evidence at this hearing is the Petition in this case. As this Court stated on the record, the Petition is part of the record and the Court did not understand why the Defendant needed it in evidence. However, since the Defendant requested that, the Court admitted the Petition into evidence as Defendant's Exhibit No. 5. Defendant's Exhibit No. 6 is the arrest warrant executed pursuant to that Petition signed by U. S. Probation Officer Tango and Judge Graham.

13. On cross-examination, Mr. Tango stated that he did prepare the Petition for Judge Graham to review on or about March 21, 2016. He was aware at the time that the Petition was prepared that the Defendant had completed the registration at the DMV, even though it was late. Once again, this Court did not understand the Defendant's argument in that regard since the Petition would necessarily have to set forth allegations of violations which would have happened in the past whether or not they were later corrected by the Defendant. Nevertheless, the testimony on cross-examination is set forth herein by the Court.

14. Mr. Tango testified that the Defendant was not brought here for his initial appearance on this particular Petition until approximately February 9, 2017. This was pursuant to a Petition for Writ of Habeas Corpus Ad Prosequendum submitted to this Court on February 7, 2017. Mr. Tango explained that the Defendant was in state custody with a U. S. Marshal's Service detainer lodged against him. He was not brought over from state custody since he was a state prisoner being held at that time. If the Defendant had bonded

out or otherwise been released by the state authorities, he would have immediately been brought here by the U. S. Marshal's Service pursuant to their detainer. Mr. Tango further stated that he is not in charge of scheduling when people are brought to court nor telling other agencies when individuals are to be brought for their initial appearance. It is his understanding that once the Defendant's state case was completed and he was sentenced by the state circuit court in January of 2017, that the writ was sought to bring the Defendant over into federal custody for his initial appearance in respect to this Petition.

15. Mr. Tango testified that Mr. LaFergola did submit a written statement to Mr. Tango concerning the allegations of the confrontation/threats the Defendant allegedly made to Mr. LaFergola. Mr. Tango asked Mr. LaFergola to put that in writing. The letter that Mr. LaFergola prepared was admitted into evidence at this hearing as Defendant's Exhibit No. 13.

16. Further, Defendant's Exhibit No. 7 is a letter from the Defendant dated August 15, 2016 to the Clerk of the federal court advising that had the present pending Petition alleging violations of supervised release and a detainer against him. He was asking for a hearing "in front of Judge Lynch about the federal hold I have." Defendant's Exhibit No. 8 admitted into evidence at the hearing is a letter dated August 15, 2015 to the undersigned United States Magistrate Judge again advising of the hold and the pending Petition in federal court which the Defendant's letter reflects.

17. Mr. Tango further testified that Mr. LaFergola told him other matters which were not contained within the letter, Defendant's Exhibit No. 13. He purportedly told Mr. Tango that the Defendant came over to his house screaming and demanding a table and other furnishings. The Defendant and Mr. LaFergola had resided together prior to the

6

Defendant's last incarceration. Mr. LaFergola told Mr. Tango that he told the Defendant that the Defendant's mother had been there and packed up all of the Defendant's personal belongings. Also, Mr. LaFergola told the Defendant that the Defendant's mother had "signed over" and given the furniture to Mr. LaFergola. Mr. LaFergola told Mr. Tango that this made the Defendant irate and the Defendant allegedly stated that he would make false allegations against Mr. LaFergola to cause him harm.

---

18. The next witness called by the government was Frank LaFergola. He identified the Defendant in open court as an individual who he alleges had threatened him and with whom he had previously lived at the Florida Avenue address in Fort Pierce. He and the Defendant first met either in jail or in counseling class "a long time ago." Mr. LaFergola is a convicted felon. He has a conviction for a sex offense as well as an assault conviction. Defendant's Exhibit No. 9 is an Information charging Frank LaFergola in the Circuit Court for St. Lucie County with lewd computer solicitation of a child and possession of cocaine. That exhibit also reflects that Frank LaFergola had been tried and found guilty of lewd computer solicitation of a child in that case in St. Lucie County Circuit Court. Defendant's Exhibit No. 11 is a composite exhibit consisting of an Information charging Frank LaFergola in the St. Lucie County Circuit Court with failure of a sex offender to enroll as required by law. The Judgment and Conviction in that case is also attached to the exhibit.

19. Mr. LaFergola testified that he did live with the Defendant at the Florida Avenue address before the Defendant's most recent sentence and incarceration. He did

testify against the Defendant in a previous violation of supervised release hearing before this Court which resulted in this Court's Report and Recommendation [D.E. 107] and the District Court's Judgment and Commitment [D.E. 119].

20. On March 17, 2016 the Defendant came to the house on Florida Avenue where Mr. LaFergola was living. Apparently the Defendant was still on that lease according to some of the testimony this Court has heard. The Defendant told Mr. LaFergola that he wanted some furniture there and specifically a glass cocktail table. Mr. LaFergola told the Defendant that his family had boxed up all of his belongings and taken them away already and that the Defendant's mother had let Mr. LaFergola keep the furnishings. Government's Exhibit No. 2 admitted into evidence is a document signed by Margaret Everhart, the Defendant's mother, stating that she had given a couch, a chair, and a glass coffee table to Mr. LaFergola.

21. Mr. LaFergola testified that the Defendant was well aware that Mr. LaFergola was a convicted felon based upon their contact as well as the fact that the Defendant has previously been found to have violated his supervised release for having contact with Mr. LaFergola, a convicted felon.

22. Mr. LaFergola testified that the Defendant purportedly told him that he would make sure that Mr. LaFergola would never work in this county again and make sure that Mr. LaFergola's life would be in danger or he would kill him. Mr. LaFergola blocked the doorway and did not let the Defendant into the residence. The Defendant purportedly said he would do things to see how Mr. LaFergola "liked it in the federal pen." It was then that Mr. LaFergola asked the Defendant to leave the property.

8

23. On cross-examination, Mr. LaFergola denies that he showed the signed receipt from the Defendant's mother to the Defendant because the Defendant was already agitated. In respect to Defendant's Exhibit No. 13, Mr. LaFergola's letter written out concerning this event, Mr. LaFergola said he did not include everything that occurred there. He did call Detective DeMichael at the sheriff's office and briefly told him about this and he also called U. S. Probation Officer Tango. He stated that he told Detective DeMichael everything. He said that Defendant's Exhibit No. 13 is just something he "wrote down quickly" and that he was told by Mr. Tango that if he did that he would not have to come and testify in court again.

24. Mr. LaFergola said he just wants to be left alone by the Defendant and he does not hold a grudge against the Defendant. Mr. LaFergola does not recall if he called the Defendant's mother during this alleged confrontation with the Defendant at the residence. The confrontation between the two was verbal. Mr. LaFergola does not allege that the Defendant at any time touched him.

25. Mr. LaFergola denies that he ever applied for a false Maryland driver's license nor for social security benefits under a fictitious name as was posited to him on cross-examination.

---

26. The next witness to testify for the government was Detective DeMichael of the St. Lucie County Sheriff's Office. He knows Mr. LaFergola and has had contact with him before since Mr. LaFergola is a registered sex offender. Mr. LaFergola did call Detective DeMichael and say that the Defendant had threatened him. It was just a couple

9

seconds over the phone. Detective DeMichael told Mr. LaFergola to hang up and call 911 and have the Fort Pierce Police Department respond since it was under their jurisdiction. He recalls it being a very short conversation with Mr. LaFergola. He did not get any details from Mr. LaFergola.

27. The government rested its case.

28. The Defendant called John Everhart, the Defendant, as its first witness. He was released from prison on March 11, 2016 and went to the Sunset Inn as directed by U.S. Probation Officer Tango. He actually wanted to go to West Palm Beach but was told that he would not be authorized to do that. The Defendant apparently has family in West Palm Beach. The Defendant testified that he did register at the St. Lucie County Jail on Monday as required as a registered sex offender. He also went to see Mr. Tango that same day. He did not register at the Department of Highway Safety and Motor Vehicles (DMV) until March 17, 2016 which was a Thursday after his release from prison on the previous Friday. He was arrested on March 18, 2016 for failure to register with the DMV as required.

29. As referenced previously, Defendant's Exhibits Nos. 7 and 8 admitted into evidence are letters that the Defendant identified in court as being written by him and sent to the Clerk of Court and to the undersigned U. S. Magistrate Judge advising that there

was a hold or detainer against him concerning this Petition for violations of supervise release.

30. The Defendant testified that he had lived with Mr. LaFergola on Florida Avenue in Fort Pierce and had furniture and personal belongings there. He went there on the date in question to get his property from Mr. LaFergola. He was told by Mr. LaFergola that the Defendant's mother had given the items of furniture to him. Mr. LaFergola then got a telephone and called the Defendant's mother and handed the telephone to the Defendant. Once the Defendant confirmed with his mother that she in fact had given the furniture to Mr. LaFergola, the Defendant left Mr. LaFergola's residence. The Defendant denies yelling or screaming at Mr. LaFergola. He did not threaten Mr. LaFergola. He said that Mr. LaFergola is dramatic in his presentation and testimony. This Court would affirm that fact that Mr. LaFergola was very animated and dramatic in his demeanor in his testimony and this Court on several occasions had to direct him to simply answer the questions asked and not start testifying and rambling narratives.

31. The Defendant testified that there are other sex offenders at the Sunset Inn where he was directed to live by the Probation Office. The Defendant testified that the manager and the manager's wife were also convicted felons at that facility.

32. He denies ever raising his voice to Mr. LaFergola. When he left the residence he simply said that he knew what Mr. LaFergola had done. He said he did not state any specifics, but that he meant that he was letting Mr. LaFergola know that he believed Mr. LaFergola filed for social security benefits under a fictitious name.

33. The Defendant then denied that Mr. LaFergola had previously testified against him in a previous violation of supervised release proceeding before this Court. The

11

Defendant stated he pled guilty and therefore there was no testimony. This Court then interjected and pointed out that [D.E. 107] which has been referred to both by his attorney and the government's attorney, is an 11 page Report and Recommendation which specifically sets forth that there was a full evidentiary hearing with many witnesses called including Mr. LaFergola. The Defendant then stated that he must have not recalled those proceedings correctly.

_____

34.    The next witness called by the Defendant was Margaret Everhart, the Defendant's mother. She knows Mr. LaFergola. She identified the Defendant as her son. Her son and Mr. LaFergola rented a house on Florida Avenue. She went there to pick up her son's personal effects after the Defendant's most recent time he was incarcerated.

35.    She did identify her signature on Government's Exhibit No. 2 as being the receipt where she was giving to Mr. LaFergola certain items of furniture. She said that Mr. LaFergola said he needed those and also she did not have any place to store those items.

36.    On March 17, 2016, she believes she received a call from Mr. LaFergola who asked her to tell the Defendant to stay away from him or he would call the Defendant's probation officer. She purportedly talked with the Defendant on the phone at that same time and advised the Defendant that she had already gotten the Defendant's personal belongings from that residence and she had given certain items of furniture to Mr. LaFergola. She testified that the Defendant said, "o.k." and that was the end of the conversation. She testified that both Mr. LaFergola and the Defendant appeared calm

12

when they were talking with her on the phone. There were no allegations of threats made on the phone by Mr. LaFergola.

---

37. The Defendant then rested.

---

## ANALYSIS

38. This Court has considered all of the evidence submitted, being the sworn testimony and exhibits, as well as arguments of counsel. The standard of proof in violations of supervised release is by a preponderance of the evidence standard and not by a beyond a reasonable doubt standard. Revocation of supervised release is treated as part of the penalty phase for the initial offense involved. The violative conduct need not be criminal and the defendant need only be found by a judge under a preponderance of the evidence standard. United States v. Cunningham, 607 F.3d 1264 (11th Cir. 2010).

39. The Defendant argues that Federal Rules of Criminal Procedure, Rule 32.1, required that the Defendant be brought immediately before this Court for an initial appearance on the Petition Alleging Violations of Supervised Release. Counsel for the Defendant argued that all violations in the Petition should be dismissed since the Defendant was not brought before this Court until early February 9, 2017 on the Petition dated March 21, 2016.

40. Counsel for the Defendant further argued that he did register with the DMV on March 17, 2016. Counsel for the Defendant admitted in response to the Court's inquiry, that that was apparently outside the 48 hour period required of the Defendant. However,

counsel was arguing that the Petition was dated March 21, 2016 and that USPO Tango when he prepared the Petition for Judge Graham already knew that the Defendant had registered on March 17, 2016. This Court pointed out that it did not understand counsel's argument since the Petition must relate alleged violations that occurred in the past even if those violations may in fact have been corrected by later actions which may or may not have negated the alleged violation.

41.   In respect to Violation Number 2 being the alleged threats, counsel for the Defendant argued that Mr. LaFergola is extremely dramatic in his presentation. Mrs. Everhart, the Defendant's mother, testified that both Mr. LaFergola and the Defendant were calm when she spoke with them on the phone when this confrontation was purportedly in progress. There were no police reports filed and no action taken by the state authorities.

42.   Counsel also argued that Florida Statute 836.05 requires some threats against an individual in exchange for making that individual do something or refrain from something or give up pecuniary gain. Counsel argued that those elements are not present.

43.   In respect to Violation Number 3, counsel for the Defendant argued that it was a very brief and isolated incident where the Defendant went to the house to get his belongings from Mr. LaFergola even though he knew Mr. LaFergola was a convicted felon. Counsel for the Defendant argued that this was not "associating with a known felon", but was rather a very brief encounter as reflected in the evidence and testimony.

44.   Counsel for the Defendant argued that the reason the government did not bring the Defendant over promptly for his initial appearance was so that they could wait for the state case to be concluded and then ask for consecutive time should the Defendant

be found to have violated his supervised release in this court. However, there is no evidence to support that theory in the record. Counsel argued that failing to bring him promptly before the Court was a violation of his due process and equal protection rights.

45. In response, counsel for the government stated that Rule 32.1 requires that the Defendant subject to a petition alleging violations of supervised release be promptly brought before the court if he is held on that charge. Counsel argued that the Defendant was actually a state prisoner at that point and in state custody. A detainer was lodged against him so that he would be immediately brought before this Court in the event his state custody was resolved favorably for him. Counsel for the government denied that there is any subterfuge or ulterior purpose and that the Defendant was writted over as soon as his state court proceedings were concluded in January of this year.

46. In respect to the threats allegedly made by the Defendant, counsel for the government argued that the Defendant told Mr. LaFergola to give him the furniture or he would make allegations against Mr. LaFergola.

47. In respect to associating with Mr. LaFergola, the Defendant knew that Mr. LaFergola was a convicted felon and should stay away from him based upon the Defendant previously being found to have violated his supervised release for such association with Mr. LaFergola as reflected in [D.E. 107] and [D.E. 119] in this case.

48. The evidence is clear to this Court that the Defendant was in state custody continuously until his case was resolved by Judgment and Sentence in late January 2017. Shortly thereafter the government presented a petition for writ to this Court. The writ was issued on February 7, 2017 and the Defendant was brought before this Court forthwith for his initial appearance and further proceedings in respect to this Petition. This Court does

not find that there is any evidence to support the argument made by counsel for the Defendant that there was some subterfuge or ulterior motive involved in delaying the Defendant's appearance. Further, there was no evidence nor even argument of any prejudice to the Defendant for any such delay.

49. In respect to Violation Number 1, this Court finds that the evidence supports the allegation that the Defendant did not change his registration with the Department of Highway Safety and Motor Vehicles on or before March 16, 2016 as required. The Defendant admitted himself that he did not do that until March 17th and the record and exhibits admitted into evidence on his behalf also confirm that it was not done until March 17, 2016.

50. In respect to the allegations of threats, this Court has observed the demeanor of both the witness Mr. LaFergola and the Defendant in testifying at this hearing. This Court agrees with counsel for the Defendant that it is a "he said-she said" situation which this Court unfortunately comes across all too often. The only independent evidence this Court can look to is the testimony of Mrs. Everhart who testified that neither Mr. LaFergola nor her son seemed agitated, upset, or complained of threats during the very brief telephone conversation they had when the Defendant was at Mr. LaFergola's residence. This Court finds that even under the preponderance of the evidence standard, that the allegations of threats which would rise to the level of satisfying the elements of Florida Statute 836.05 have not been received into evidence. This Court finds that the government has not met its burden in respect to Violation Number 2 in that regard.

51. In respect to Violation Number 3, this Court would agree with counsel for the Defendant that this was a very brief confrontation between the Defendant and Mr.

LaFergola. There is no question that based upon the evidence at this hearing and at the hearing this Court previously conducted on May 29, 2015, that the Defendant knew Mr. LaFergola was a convicted felon. Further, the evidence is clear that the Defendant had been advised to not associate with convicted felons and specifically Mr. LaFergola based upon this Court's previous hearing in May of 2015. The only caveat would be if his probation officer would grant prior permission to allow the Defendant to associate or meet with any convicted felon.

52. While this appears to be merely a technical violation, it is in fact a violation. The Defendant should have sought permission from his probation officer when he saw Mr. Tango on March 17, 2016 before he went to the LaFergola residence. Whether or not Mr. Tango would have granted that permission is uncertain at this point. However, that would have been the proper procedure as had been previously explained to the Defendant when he was advised of his conditions of supervised release. He should have sought permission to go over there and pick up his belongings. If he was not granted permission, then the Defendant would have had to make other arrangements with other family members to get his belongings just as they apparently had done without his knowledge prior to him going to the LaFergola residence. Therefore, even though this Court views Violation Number 3 as a technical violation because it was a very brief encounter between the Defendant and Mr. LaFergola, it still has been substantiated by a preponderance of the evidence.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to Violations Numbers 1 and 3 only, and that he be found to have not violated his supervised release in respect to Violation Number 2.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this ___ day of March, 2017 at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Donald L. Graham
AUSA Daniel Funk
John F. O'Donnell, Esq.
U. S. Probation (USPO Robert Tango)